UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                           :

DEBORAH L. SMITH,                :          CASE NO. 5:04CV2055
                           :

           Plaintiff,             :
                           :

vs.                            :          OPINION MEMORANDUM
                           :          [Resolving Doc. Nos. 30, 39, 40, 44, 48]

ALLSTATE INSURANCE COMPANY,  :
et al.,                                 :
                           :

           Defendants.        :
                           :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Before the Court is the motion for summary judgment of Defendants Allstate Insurance Company and Karl Meckert. [Doc. 30].  Plaintiff Deborah L. Smith opposes the defendants' motion.  [Doc. 33]. In this case, the plaintiff charges the defendants with (1) race and sex discrimination in violation of Title VII, (2) age discrimination in violation of the Age Discrimination in Employment Act, and (3) retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 and the Fair Labor Standards Act.  For the reasons that follow, the Court **GRANTS** the defendants' motion for summary judgment.

        Further, the Court **DENIES** the following: the defendants' motion to strike untimely expert designation and report [Doc. 44]; the defendants' motion to exclude expert report [Doc. 40]; and the defendants' motion to clarify pretrial dates [Doc. 48].  The Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion to strike [Doc. 39].

Case No. 5:04CV2055
Gwin, J.

## I.  Background

### A.  Introduction

Plaintiff Smith, a black female, previously worked for Defendant Allstate as a Property Claims Adjuster in Allstate's Great Lakes Market Claims Office ("MCO") in Hudson, Ohio.  The Great Lakes office is one of ten Market Claims Offices within Allstate's Crossroads Claims Service Administration ("CSA").  The Crossroads CSA includes Market Claims Offices in Michigan, Indiana, and Ohio.  On December 31, 2003, Allstate terminated Smith's employment.  At that time, Smith was 47 years old and had worked for Allstate for 29 years.  Defendant Meckert was the Market Claims Manager for the Great Lakes Market Claims Office at the time of Smith's firing.

### B.  The Reduction In Force

In part, Smith claims that Allstate discharged her in retaliation for her participation in a lawsuit against Allstate under the Fair Labor Standards Act ("FLSA").  In March 2003, Smith gave Allstate notice of her joinder in the separate FLSA lawsuit that other Allstate employees filed against the company: *Gaglione v. Allstate Ins. Co.*, case no. 5:02cv1988 (N.D. Ohio Oct. 7, 2002).  The employees filed the FLSA case in October 2002, alleging that Allstate violated the FLSA when it required them to work more than 40 hours per week without paying overtime.

Defendant Allstate says that it fired Smith as part of a Fall 2003 reduction in force necessitated by a decline in insurance claims.  In 2003, Allstate suffered an 18.3% drop in auto claim counts and a 29 percent drop in property claim counts.  Allstate says that it reasonably projected continued declines into 2004 and responded with the reduction in force.

Case No. 5:04CV2055
Gwin, J.

In deciding who it would fire, Allstate says human resources personnel applied three criteria: (1) business need, (2) performance development summary ratings, and (3) in the event of a tie, an employee's service date.  The parties agree that there were no ties, and that Allstate did not apply the third factor.

As to the first factor, business need, Allstate excluded adjusters in its Dayton and Cincinnati offices from the force reduction because those offices had staffing shortages despite the overall decrease in claims. Adjusters at the other Crossroads Market Claims Offices did not benefit from the business need exception.

Allstate applied performance development summary ratings to determine which eligible employees would be terminated during the force reduction.  Near October 7, 2003,  regional Human Resources Division Manager Sybil Brenner generated a list of Crossroads employees who had a pending "requires improvement" rating on their annual performance development summaries.  Plaintiff Smith was among the 32 employees on the list.  David Munoz, another Hudson adjuster, was also on the list.  Like Smith, Munoz was a plaintiff in the FLSA lawsuit.

In late October 2003, Allstate fired all 32 of the eligible employees with requires-improvement ratings.  Of the 32 impacted employees, 17 were male, 15 were female, 14 were under age 40, 18 were above age 40, 21 were white, and 11 were minorities.  Plaintiff Smith and Munoz were the only two impacted Hudson adjusters.  Allstate did not fire any other plaintiffs in the FLSA lawsuit.  The only requires-improvement-rated Crossroads adjusters Allstate did not fire worked in the Dayton, Ohio office, and were exempt due to business need.

*C.  Allstate's Hires Before And After the Reduction In Force*

In 2002,  Allstate hired 95 employees and fired 118.    That year, Allstate consolidated offices in

-3-

Case No. 5:04CV2055
Gwin, J.

Ohio, Indiana, and Michigan.  Allstate consolidated seven Ohio offices into three offices.  The Hudson office lost 27 adjusters due to transfers to other offices, retirement, and voluntary terminations.

Allstate hired six new adjusters from January through March 2003, before Allstate officials determined that a force reduction would be necessary.  In 2004, after the force reduction,  Allstate hired two new adjusters.  Most of the new hires during this period were either white, younger than Smith, and/or male.

*D.  Allstate's Performance Rating System*

Frontline Performance Leaders in each Allstate Market Claims Office are responsible for rating claims adjusters in four major skill areas and several sub-skills.  The most important skills are timely claims investigation, customer service, timely customer contact, and file documentation.  In evaluating adjusters, FPLs review the adjusters' files and observe the adjusters' work.  The Frontline Performance Leaders assign scores for each skill area based on the percentage of files reviewed that meet Allstate's standards.  Adjusters with overall scores of 70 to 84.6 percent receive ratings of "meets" and adjusters with  scores at or above 85 percent receive  "exceeds" ratings.  Adjusters with scores less than 70 receive "requires-improvement" ratings.

Adjusters with final requires-improvement ratings are placed on corrective review in which the FPLs re-evaluate them every 30 days.  During this process, the adjusters have 120 days to meet specified goals.  If an adjuster does not meet the goals, the corrective review may extend another 60 days.  If the adjuster does not meet the goals at the end of the review period, Allstate places him in "job-in-jeopardy" status for 120 days.  During that phase, the employee is subject to immediate termination at any time.

Case No. 5:04CV2055
Gwin, J.

*E.  Smith's Work History*

Smith's job performance during her 29 years with Allstate was mixed.  Beginning in 1981, five supervisors counseled Smith on various job performance deficiencies, especially timeliness and quality investigation.  For her part, Plaintiff Smith testified that she felt the supervisors were wrong and that she "didn't think [she] had any weaknesses." [Smith Dep. at 8, 10].  Despite the repeated concern that her supervisors expressed, Smith felt there was "[n]othing [she] could improve on."  *Id.* at 9.  Smith also received approximately 137 complimentary letters from customers and co-workers during her Allstate employment.

Smith's performance issues continued into 2002 and 2003.  In 2002, Smith received interim evaluation scores of 38.7 and 40.4.  In March 2003, Frontline Performance Leader Karen Denny evaluated Smith's performance during the 2002 calendar year.  Smith received a composite score of 49.4 percent, well below the 70 percent cut-off for requires-improvement scores.  Denny also gave requires-improvement scores to two other Hudson adjusters.  Denny placed Smith and the two others adjusters on a sixty-day corrective review plan.

At the end of the 60 day period, Smith's evaluators felt she still had not sufficiently improved her performance.  Instead of placing Smith in "job-in-jeopardy" status, Allstate gave Smith an additional 30 days to improve her performance.  While the other two Hudson adjusters with annual requires-improvement scores improved their performance and came off corrective review by October 2003, Smith received a score of 43.9 in her September 2003 interim review.  Near October 21, 2003, Denny placed Smith in job-in-jeopardy status.  By the end of October, Allstate notified Smith and 31 other workers that

-5-

Case No. 5:04CV2055
Gwin, J.

they would be fired as part of the reduction in force.

## II.  Legal Standard

*A. Summary Judgment*

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001).  A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn from them in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.*

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication.  The dispute must concern facts that, under the substantive law governing the

-6-

Case No. 5:04CV2055
Gwin, J.

issue, might affect the outcome of the suit.  *Anderson*, 477 U.S. at 248.  The factual dispute also must be

genuine.  The facts must be such that if proven at trial a reasonable jury could return a verdict for the

nonmoving party.  *Id.*  "The disputed issue does not have to be resolved conclusively in favor of the

nonmoving party, but that party is required to present significant probative evidence that makes it necessary

to resolve the parties' differing versions of the dispute at trial."  *60 Ivy Street Corp. v. Alexander*, 822

F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253,

288-89 (1968)); *see also Celotex*, 477 U.S. at 322.

*B.  Title VII, The ADEA, And The FLSA*

> Title VII of the Civil Rights Act of 1964 declares that:

>> It shall be an unlawful employment practice for an employer . . . (1) to fail
>> or refuse to hire or discharge any individual, or otherwise discriminate
>> against any individual with respect to his compensation, terms, conditions,
>> or privileges of employment, because of such individual's race, color,
>> religion, sex, or national origin.

42 U.S.C. § 2000e-2.  Similarly, the Age Discrimination in Employment Act declares that:

>> it shall be unlawful for an employer to . . . discriminate against any
>> individual with respect to his compensation, terms, conditions, or privileges
>> of employment, because of such individual's age.

29 U.S.C. § 623.

> The Fair Labor Standards Act, 29 U.S.C. § 215, makes it unlawful for employers "to discharge

or in any other manner discriminate against any employee because such employee has filed any complaint

or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. §

215(a)(3).  Title VII includes a similar prohibition on retaliation.  42 U.S.C. § 2000e-3(a).

-7-

Case No. 5:04CV2055
Gwin, J.

### III.  Analysis

#### A.  *Title VII And ADEA Claims Against Defendant Meckert*

Ms. Smith's Title VII and ADEA claims against Defendant Karl Meckert fail because those statutory remedies do not permit causes of action against individual supervisors.  In the Sixth Circuit, it is well settled that personal liability does not extend to supervisors because they do not fit within the definition of "employer" used in Title VII.  *See Wathan v. General Elec.*, 115 F.3d 400, 404-5 (6th Cir. 1997) ("an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII").  The same holds true for suits under the ADEA.  *See id.* at 404 n.6 ("Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate.").  Smith's ADEA and Title VII discrimination claims against Defendant Meckert  thus fail.  Even if Smith could pursue her discrimination claims against Defendant Meckert, those claims would fail for the same reasons as those against Defendant Allstate.

#### B.  *Title VII And ADEA Claims Against Defendant Allstate*

Smith alleges that Allstate's decision to terminate her employment constituted disparate treatment under Title VII and the ADEA.  Alternatively, Smith alleges that Allstate's policies had a disparate impact on her. The parties analyze Smith's age, sex, and race discrimination claims together.  Because the different discrimination claims involve similar elements, the Court also analyzes them together.

##### 1.  *Disparate Treatment*

In the absence of direct evidence of discrimination, federal courts analyze race, gender, and age

Case No. 5:04CV2055
Gwin, J.

discrimination claims under the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802-03 (1973).  *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252 (1981);

*Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998); *Ercegovich v. Goodyear*

*Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir. 1998); *Blackwell v. Sun Elec. Co.,* 696 F.2d 1176,

1180 (6th Cir. 1983) (courts should allocate burden of proof in ADEA case according to *McDonnell*

*Douglas* analysis).

 If the plaintiff lacks direct evidence of race or age discrimination, she must make out a prima facie

case under 28 U.S.C § 2000e by showing by a preponderance of the evidence that she: (1) is a member

of a protected group; (2) experienced an adverse employment action; (3) was qualified for the position;

and (4) received different treatment than employees outside of the protected class for the same or similar

conduct.  *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

 This framework varies slightly for age discrimination claims. *See O'Connor v. Consolidated Coin*

*Caterers Corp.*, 517 U.S. 308, 309 (1996).  In the ADEA context, a plaintiff establishes a prima facie

case of age discrimination by showing that she: 1) is over the age of 40; 2) was subject to an adverse

employment decision; 3) was qualified for the position; and 4) was replaced by a younger person.  *Skala*

*v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1999).   An employer can

violate the ADEA when it prefers a younger employee, even if that younger employee is within the

protected class of workers aged 40 and over. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir.

1990).

 Once the plaintiff establishes a prima facie case, a presumption arises that the defendant unlawfully

-9-

Case No. 5:04CV2055
Gwin, J.

discriminated against the plaintiff.  *Talley*, 61 F.3d at 1246.  The defendant then bears a burden of production to articulate a legitimate non-discriminatory reason for its conduct.  If the defendant offers such a reason, the burden of persuasion shifts to the plaintiff to show that the employer's claimed reason is a pretext and that discrimination was a "determinative factor."  *Id.*

The *McDonnell Douglas* framework changes in the context of a work-force reduction.  *See Barnes*, 896 F.2d at 1465[1].  Under that circumstance, the fourth element, replacement by someone outside of the protected class, is modified because the employer does not replace the employee.  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999).  Instead, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons."  *Id.* (quoting *Barnes*, 896 F.2d at 1465).  This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker based on age.  *Barnes*, 896 F.2d at 1466.

The defendants argue that Smith fails to demonstrate that (1) she was qualified for the position and (2) Allstate singled her our for discriminatory reasons.  Plaintiff Smith disagrees.  As discussed below, Smith does not demonstrate a prima facie case of discrimination.

---

[1] The United States Court of Appeals for the Sixth Circuit describes a reduction in force as follows:

A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge.  However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465.  The current case is a reduction in force.  No new hire replaced Smith, and other Allstate adjusters took over her work.

-10-

Case No. 5:04CV2055
Gwin, J.

### a. Prima Facie Case- Qualifications

To demonstrate that she possessed the necessary qualifications for her job, Smith must show that "[s]he was performing [her] job at a level which met [her] employer's legitimate expectations." *Godfredson*, 173 F.3d at 372. Smith says that she was qualified by virtue of her nearly 30-years' experience and her complimentary letters from customers.

Allstate contends that Smith's performance ratings in 2002 and 2003 demonstrate that she was not qualified for the position. However, the Court does not consider the justification that Allstate gives for the firing when deciding whether Smith was qualified. In the Sixth Circuit's words:

> A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the employee's prima facie case of discrimination . . . ; to do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir.2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."). In light of *Wexler*, Smith meets her burden on the qualification issue.

### b. Prima Facie Case - Singled Out For Discharge

Smith does not demonstrate that Allstate singled her out for discharge based on discriminatory reasons. In the context of a reduction in force, Plaintiff Smith must present "extra" direct, circumstantial, or statistical evidence indicating that the Allstate singled her out based on her age, race, or sex.

-11-

Case No. 5:04CV2055
Gwin, J.

*Godfredson*, 173 F.3d at 371.  "This 'extra' evidence has to be 'sufficiently probative' to permit the finder

of fact to believe that the defendant intentionally discriminated against the worker due to [her protected

status]."  *Godfredson v. Hess & Clark, Inc.*, 996 F. Supp. 730, 735 (N.D. Ohio 1998) (Gwin, J.).

Smith asserts that Allstate treated similarly situated employees from outside the protected classes

more favorably than Smith during the force reduction.  She says that "a total of 66 employees in the

Crossroads CSA were performing at requires-improvement levels during 2003." [Pl. Br. at 10].  According

to Smith, Allstate only fired 32 of the 66 requires-improvement-rated employees, and "most of these non-

terminated requires-improvement employees were non-minorities."[2/]  *Id.* at 11.  Smith adds that six other

adjusters in her home unit performed at the requires-improvement level in 2003, but Allstate only fired

Smith.  All six of these retained employees were white, and two of them were male.

The record does not support Smith's theory.  First, there is no evidence that any other adjuster in

the plaintiff's unit had a pending annual performance development summary rating of "requires-

improvement" at the October 7, 2003 cut-off date.  Two of the six adjusters to whom the plaintiff refers

(Kantorowski and Young) only had interim, not annual, requires-improvement scores, and only after

October 7, 2003.  The  plaintiff offers no evidence that the third adjuster (Price) had a requires-

improvement score at any time.  Allstate removed the fourth and fifth adjusters (Fryman and Kennedy) from

RI status by October 7, 2003.  [Doc. 30, Ex. B at 1563-1564, Ex. C at 1329-1332].  The sixth adjuster

(Dust) was not in the plaintiff's unit, and the plaintiff does not present any evidence that Dust had a pending

annual requires-improvement rating.  Additionally, the fact that (1) the plaintiff does not offer any

---

[2/] Smith only identifies three non-minority individuals who purportedly received requires-improvement ratings but were not fired. [Doc. 33 at 11].

Case No. 5:04CV2055
Gwin, J.

information as to these individuals' ages and (2) four of the six retained employees were females undermines any inference of sex or age discrimination. *Nelson v. General Elec. Co.*, 2 Fed. Appx. 425, 432 (6th Cir. 2001).

Nor does the record help the plaintiff as to the 27 employees outside of the plaintiff's unit that she says had annual requires-improvement ratings by October 7, 2003.  Although Plaintiff Smith says most of the remaining "non-terminated requires-improvement employees were non-minorities," she offers only three examples.  [Doc. 33 at 11].  All three of the proffered adjusters worked in Allstate's Michigan Property MCO.  The first adjuster (Wilson) received only an interim requires-improvement rating, and received a final overall rating of "meets" for 2003. [Doc. 33, Ex. 8 at 8463, 8488].  The second adjuster (Banks) had an interim rating of "meets" before October 7, 2003, and only received an interim requires-improvement score after October 7, 2003.  [*Id.* at 2, 5926, 10449, 10473].  The third adjuster (Hawkins) did not receive a final requires-improvement score until November 2003. [*Id.* at 2, 13453-13456, 13522-13523]. In other words, Smith does not show that these comparators had annual requires-improvement scores at the relevant time.

> c. *Pretext*

Even assuming that Plaintiff Smith establishes a prima facie case of discrimination under Title VII and the ADEA, she does not demonstrate that Allstate's reasons for the force reduction were pretext for discrimination.  To show pretext, the plaintiff must demonstrate that Allstate's reasons (1) have no basis in fact,  (2) did not actually motivate the discharge, or (3) were insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

-13-

Case No. 5:04CV2055
Gwin, J.

Allstate contends that declining claims levels necessitated the reduction-in-force, and that the plaintiff's low annual performance development summary ratings was a non-discriminatory justification for her firing.  The plaintiff responds that (1) claim counts increased, rather than decreased, (2) Allstate hired new adjusters in 2002, and (3) Allstate's performance evaluation system "is not worthy of belief." [Doc. 30 at 13].

The plaintiff's first point of rebuttal does not hold water.  Based on Allstate's internal C122 reports, the plaintiff says that claim counts increased from 2003 to 2004.  However, as Allstate says, the C122 reports only list claims from within Ohio, and not from the entire Crossroads CSA.  Allstate's C-Mart report, which lists total claims numbers from the Crossroads CSA, demonstrates that total claims within the Crossroads CSA declined more than 7 percent from 2003 to 2004.  The plaintiff concedes that there was also "a significant reduction" in the claim counts from 2001 to 2002.  Under these circumstances, Plaintiff Smith does not demonstrate that Allstate's business justification for the force reduction in force was pretext.

Even if the Court were to assume that Allstate's business reasoning leading to the reduction was foolish, as the plaintiff suggests, foolishness does not equal pretext.  *See Gatch v. Milacron*, 111 Fed. Appx. 785, 791 (6th Cir. 2004) ("even if the RIF was not entirely necessary from a business standpoint, it unquestionably occurred, resulting in the elimination of 38 jobs . . . .  This evidence simply does not permit a finding that age discrimination rather than business judgment motivated the RIF"); *Hutchison v. AAR Advanced Structures*, No. 99-1520, 2000 U.S. App. LEXIS 27614, at *11 (6th Cir. Oct. 26, 2000) (finding no pretext and holding in reduction context that "[i]t is not the Court's job to second guess the

-14-

Case No. 5:04CV2055
Gwin, J.

financial wisdom of [the employer's] response to its economic problems").

The plaintiff's reference to Allstate's new hires in 2002 is also to no avail.  While Allstate hired 95 new employees in 2002, it also fired 118 employees that year.  Allstate explains that a consolidation of its offices in Ohio, Indiana, and Michigan in 2002 led to the loss of 27 adjusters in the Great Lakes Property MCO.  That resulted in a staffing shortage despite the declining claim numbers.  Smith does not dispute Allstate's explanation.  Similarly, while Allstate hired six new adjusters from January through March 2003, those hires occurred before Allstate decided to institute the force reduction.  *See Ploscowe v. Kadant*, 121 Fed. Appx. 67, 76 (6th Cir. 2005) (holding that an employer's decision to hire new employees in the months before a reduction in force is insufficient to show pretext).  Nor does the fact that Allstate hired two new adjusters in the Crossroads CSA in 2004 support a finding of pretext.  *See Almond v. ABB Indus. Sys., Inc.*, 56 Fed. Appx. 672, 678 (2003) (affirming summary judgment for defendant employer in ADEA suit, where employer hired new workers after a reduction in force; holding that "an employer has no duty to recall laid-off workers when a new position opens up").  After Smith's firing, Allstate added only two new employees.  This was a minimal addition, relative to Allstate's size.

Allstate's performance evaluation system does not support a finding of pretext.  The plaintiff offers Dr. John Burke, Jr., as an expert on this issue.  Dr. Burke reviewed Allstate's evaluation system on Smith's behalf.  According to Burke, Ms. Denny evaluated Smith by reviewing 37 files from approximately 900 files upon which Smith worked in 2003.[3/]  Burke concludes that this sample size was too small to provide a reasonable measure of Smith's performance.

---

[3/]The defendants contend that Smith worked on only 292 files in 2003.

Case No. 5:04CV2055
Gwin, J.

The defendants move to strike Dr. Burke's affidavit. Setting aside the defendants' motion to strike, Dr. Burke's affidavit does not assist the Court's analysis. Even if the Court accepts Burke's analysis, a plaintiff "does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors." *Meadows v. Ford Motor Co.*, No. 00-3231, 2001 U.S. App. LEXIS 18654, at *3 (6th Cir. Aug. 9, 2001) (affirming summary judgment for defendant employer in ADEA suit). Though the system may have been imperfect, Smith does not demonstrate that Allstate applied the system in a discriminatory fashion. *See Cindea v. Jackson Twnshp.*, No. 97-3280, 1998 U.S. App. LEXIS 2748, at *7 (6th Cir. 1998) (affirming summary judgment for defendant employer in ADEA suit and holding that "[a]lthough it is undisputed that the [employee] rating system was unique and perhaps 'imperfect,' without more, these factors do not create an inference of nefarious motivations").

The Seventh Circuit reached a similar result in *El-Marazki v. University of Wisconsin*, No. 97-2069, 1998 U.S. App. LEXIS 307 (7th Cir. Jan. 8, 1998). In that case, the plaintiff sued her former employer for gender and national origin discrimination under 42 U.S.C. § 1983. The district court granted summary judgment for the defendant, and the Seventh Circuit affirmed. The plaintiff argued, in part, that the defendant fired her based on a performance review process of "subjective and inconsistent quality." *Id.* at *14. The Seventh Circuit found that the plaintiff's argument lacked merit because the employer evaluated all of its employees according to the same procedures. Consequently, the flaws in the evaluation system were "not indicative of whether the evaluation system was unfairly applied in a discriminatory fashion." *Id.* at *16. As in this case, the plaintiff does not overcome the fact that the employer applied the arguably flawed evaluation system to all employees.

-16-

Case No. 5:04CV2055
Gwin, J.

Additionally, even if the Court assumes that Smith met Allstate's performance standards during her first 27 years of employment, that does not save her from the poor performance ratings in 2002 and 2003, especially in light of her separation during a reduction-in-force. *See Pasko v. American Nat'l Can Corp.*, 998 F. Supp. 807 (N.D. Ohio 1998) (granting summary judgment for defendant employer in ADEA suit, where plaintiff's most recent performance ratings did not meet employer's standards).

The plaintiff does not demonstrate pretext.

### 2. Disparate Impact

Plaintiff Smith makes a disparate impact discrimination claim as an alternative to her disparate treatment claim. Disparate impact claims penalize employment practices that are "fair in form but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To make a prima facie case of disparate impact, the plaintiff must (1) identify a specific challenged employment practice, and (2) prove that the practice had an adverse impact on a protected class through relevant statistical analysis. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975). If the plaintiff succeeds in making a prima facie case, the defendant must provide a business justification for the challenged practice. *Griggs*, 401 U.S. at 432. If the employer succeeds, the plaintiff must then show that alternative employment practices could serve the employer's business purpose without the discriminatory impact. *Albemarle*, 422 U.S. at 425, 432.

### a. Prima Facie Case

Plaintiff Smith identifies the reduction in force as the challenged employment practice for her disparate impact analysis. The plaintiff begins her statistical analysis by lumping all "minorities" together into

-17-

Case No. 5:04CV2055
Gwin, J.

one group and comparing them to "white employees." [Doc. 33 at 14]. The plaintiff offers no insight into whether the so-called minority employee pool includes all racial and ethnic minorities, or only African Americans. Nor does the plaintiff distinguish between the sexes or different age groups in her analysis. Instead, the plaintiff asserts that the Crossroads CSA had 649 white employees and 116 minority employees, and that Allstate fired 18 of the whites and 10 of the minorities. *Id.* The plaintiff concludes that the force reduction resulted in an 8.6 percent dismissal rate for minority employees, and a 2.7 percent dismissal rate for white employees. *Id.*

To perform her statistical analysis, the plaintiff uses data from Allstate's disparate impact analysis conducted before the force reduction. [Doc. 33 Ex. 20]. The plaintiff reaches her conclusions based on the calculations of her counsel, and does not attempt to offer any expert statistical analysis. Statistical analyses by plaintiffs' counsel are insufficient evidence to support a prima facie disparate impact case. As Judge George White explained in the context of a Title VII and ADEA disparate impact claim:

> First, plaintiffs' counsel is not and never qualified himself as an expert in statistics. He purports to summarize data, run percentages, and perform statistical computations on data although he is not qualified to do the same and cannot be cross-examined on his background or methods. As such, plaintiffs' attempt to prove a disparate impact case based on their attorney's statistical analysis must fail at the outset.

*See Johnson v. United States HHS*, No. 88-cv-2383, 1992 U.S. Dist. LEXIS 22673, at *47 (N.D. Ohio 1992) (citing *Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1552 (D.C. Cir. 1988)).

Additionally, the authorities upon which the plaintiff relies demonstrate that pooling different minority groups into a single group does not provide a proper comparison to white employees in a disparate impact claim. *See Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) ("In cases challenging discriminatory

-18-

Case No. 5:04CV2055
Gwin, J.

hiring practices toward African-Americans, for example, one compares the percentage of African-Americans in the job to the percentage of African-Americans in the total qualified local labor force . . . . One then contrasts this ratio with the corresponding ratio for non-protected group members."); 29 C.F.R. § 1607.4(D) (referring to selection rates for "any race, sex, or ethnic group").

Even if the Court lumped all minorities together for purposes of the statistical analysis and used data from Allstate's disparate impact study, as the plaintiff proposes, Allstate's study demonstrates that the retention rate for exempt minority employees was equal to 93 percent of the retention rate for white employees.  [Doc. 33 Ex. 20].  Although Plaintiff Smith focuses on the termination rate, the retention rate provides the more appropriate analysis.  *See Smith v. Xerox Corp.*, 196 F.3d 358, 368 (2d Cir. 1999) (affirming summary judgment for defendant employer on ADA, ADEA, and Title VII disparate impact claims; "[t]he questions to be answered are thus what is the composition of the population subject to the reduction-in-force, *what was the retention rate of the protected group compared to the retention rate of other employees,* and how much of a differential in selection rates will be considered to constitute a disparate impact") (emphasis added); *Council 31, AFSCME v. Doherty*, 169 F.3d 1068, 1072 (7th Cir. 1999) (affirming summary judgment for employer and noting that retention rate analysis is consistent with EEOC guidelines).  The 94 percent retention comparison rate passes the so-called "four-fifths rule" that the plaintiff asks the Court to apply.  *See* 29 C.F.R. §1607.4.  Plaintiff Smith fails to establish a prima facie disparate impact case.

### b. Business Justification And Alternative Practices

Even if the plaintiff establishes a prima facie disparate impact case, her disparate impact claim still

-19-

Case No. 5:04CV2055
Gwin, J.

fails. To rebut a prima facie disparate impact cases, defendant employers need only establish that the challenged employment practice "serves, in a significant way, the legitimate employment goals of the employer." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 659 (1989). Defendant Allstate demonstrates that business need justified the reduction in force. Specifically, Allstate undertook the reduction in force to reduce personnel costs in the wake of declining claim counts. The Sixth Circuit recognizes such reasoning as valid justification for a reduction in force. *See Ringl v. Ameritech Corp.*, No. 96-1034, 1997 U.S. App. LEXIS 2746, at *13-14 (6th Cir. Feb. 12, 1997) (affirming summary judgment for employer on state law disparate impact claim in reduction context; holding that employer demonstrated business justification by showing that it implemented reduction based on economic needs and not discriminatory motive); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942 (6th Cir. 1987) (holding that a "general reduction in force due to economic necessity and [the plaintiff's] poor performance" were legitimate reasons for reduction). To the extent the plaintiff argues that Allstate's claim numbers were not declining at the time of the reduction in force, the Court has already discussed that the plaintiff bases her argument on incomplete data from C122 reports.

Plaintiff Smith makes no attempt to meet the third prong of the disparate impact analysis. That is, she fails to offer any alternative to Allstate's selection criteria that would have a lesser impact on protected classes. *See Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 579 (6th Cir. 2004) (affirming summary judgment for defendant employer on Title VII disparate impact claim where "[p]laintiffs fail[ed] to suggest another equally effective system" for the employer to meet business needs); *Ringl*, 1997 U.S. App. LEXIS 2746, at *14 (affirming summary judgment for employer on disparate impact claim where

-20-

Case No. 5:04CV2055
Gwin, J.

plaintiff "failed to offer any evidence of pretext or any evidence that [the employer's] legitimate business goals could have been served in a less discriminatory manner").

The Court grants summary judgment to the defendants on the plaintiff's disparate impact claim.

*C.  FLSA And Title VII Retaliation Claims*

The plaintiff claims that Allstate violated the FLSA and Title VII by firing her in retaliation for her participation in a separate FLSA lawsuit.  Allstate replies that Smith fails to establish a causal connection between the FLSA lawsuit and her firing, and does not rebut that Allstate had a legitimate reason to fire Smith.  The Court agrees with Allstate.

The FLSA makes it unlawful for an employer to take adverse employment action against an employee in retaliation for (1) filing an FLSA complaint against the employer, (2) instituting an FLSA proceeding against the employer, or (3) testifying in an FLSA proceeding.  *See* 29 U.S.C. § 215(a)(3); *McDaniel v. Transcender, LLC*, 119 Fed. Appx. 774, 779 (6th Cir. 2005).  Similarly, Title VII prohibits retaliatory employment actions against employees who oppose workplace practices that violate Title VII or who participate in Title VII proceedings.  *See* 42 U.S.C. § 2000e-3(a).

The Sixth Circuit applies the *McDonnell Douglas* framework to workplace retaliation claims.  *See McDaniel*, 119 Fed. Appx. at 779.  To establish a prima facie retaliation case, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew about the protected activity, (3) the employer took an adverse employment action against the employee, and (4) there was a causal connection between the protected activity and the adverse action.  *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).  If the plaintiff establishes a prima facie case, the defendant can demonstrate a legitimate reason

-21-

Case No. 5:04CV2055
Gwin, J.

for the adverse employment action.  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).  The plaintiff must then show that the proffered reason for the action was pretext for retaliation.  *Id.*

   *1. Retaliation Claims Against Defendant Meckert*

   The Court previously explained that the plaintiff's Title VII claims against Defendant Meckert fail because Title VII does not recognize a cause of action against individual supervisors.  *See supra* Part III.A. The Court incorporates that discussion herein, and finds that Smith cannot make a Title VII retaliation claim against Meckert.

   Smith's FLSA and Title VII retaliation claims against Meckert fail for another reason.  Allstate offers evidence that Meckert was not a decision-maker in the selection process leading to the reduction in force.  [Doc. 30 at 22, Ex. 16 ¶ 10].  Smith offers no evidence to the contrary.  Again, the FLSA prohibits "any person" from discharging or otherwise discriminating against any employee in retaliation for her participation in an FLSA proceeding.  29 U.S.C. § 215(a)(3).  There is no evidence that Meckert played any role in including Smith in the force reduction.  Nor did Meckert terminate Smith's employment. Rather, Allstate Human Resource Manager Anita Pichon-Grooms singed Smith's termination letter. [Doc. 33 Ex. 5].  Because there is no evidence that Meckert discharged or otherwise discriminated against Smith in retaliation for her FLSA lawsuit, the Court grants summary judgment to Meckert on the retaliation claims.

   Alternatively, even if Meckert had played a role in terminating Smith, Smith's retaliation claims against Meckert fail for the reasons discussed below.

   *2. Prima Facie Case*

Case No. 5:04CV2055
Gwin, J.

Defendant Allstate does not dispute that Smith engaged in a protected activity or that Allstate took an adverse employment action against Smith.  Smith thus satisfies the first and third elements of her prima facie retaliation case.  Allstate contends that Smith fails to demonstrate a causal connection between the protected activity and the termination, and that the Allstate officials behind the reduction in force did not know about her protected activity.

Plaintiff Smith can establish a causal connection through (1) direct evidence or (2) by demonstrating knowledge coupled with a closeness in time that creates an inference of causation. *Parnell v. West*, No. 95-2131, 1997 U.S. App. LEXIS 12023, at *6-7 (6th Cir. May 21, 1997).  Temporal proximity will not create an inference of causation "when there is no other compelling evidence." *Id.* at *7.

Smith does not offer direct evidence of causation.  Instead, she says that Meckert and Crossroads Claims Field Director Kathleen Mahne had a conversation on or about October 7, 2003, in which Mahne informed Meckert that Smith and Munoz were plaintiffs in the FLSA lawsuit. [Doc. 30 at 16].  Smith cites Meckert's deposition to support this theory. *Id.* (citing Meckert Aff. at 57, 58].  However, the cited pages indicate only that Meckert learned of Smith's involvement in the FLSA lawsuit "sometime in 2003." [Doc. 33, Ex. 2 at 57].  Meckert's deposition does *not* indicate that he learned of Smith's involvement at or near the time of Smith's termination.  More importantly, there is no evidence that Meckert participated in selecting which employees would be subject to the reduction in force.  Meckert denies any such participation, and Smith offers no information on the subject. [Doc. 30, Meckert Aff. ¶ 10].

Smith also contends that Mahne actively tried to dissuade Allstate employees from participating in the FLSA lawsuit. [Doc. 33 at 16].  Smith relies on her affidavit filed in opposition to summary judgment.

-23-

Case No. 5:04CV2055
Gwin, J.

[Doc. 33, Ex. 1 ¶ 7].  But Smith's affidavit testimony directly contradicts her deposition testimony.  At her

deposition, Smith testified that Mahne held a meeting for employees about the FLSA lawsuit, that Mahne

advised employees they did not have to join the lawsuit, and that Mahne did not threaten anyone. [Smith

Dep. at 22-23].  Smith cannot create an issue of fact precluding summary judgment by contradicting her

own deposition testimony.  *See Steier v. Best*, 109 Fed. Appx. 1, 10 (6th Cir. 2004).

　　　　Smith also relies on an affidavit by David Munoz, in which Munoz contends that Mahne held

meetings with adjusters in the Great Lakes MCO in which she told them they "should not join the FLSA

action . . . . " [Doc. 33, Ex. 9 ¶ 4].  The defendants move to strike Munoz's affidavit because Smith never

disclosed Munoz as a potential witness in this matter. [Doc. 30].  Smith does not argue otherwise, and

instead replies that she only discovered information about Munoz "at the 11th hour." [Doc. 41 at 6].

　　　　Whether to strike Munoz's affidavit for failure to comply with discovery deadlines is subject to the

Court's discretion.  *Seay v. TVA*, 339 F.3d 454, 480 (6th Cir. 2003).  In the Sixth Circuit's words, "the

fact that a party has had ample opportunity during discovery to present evidence provides courts with

reason to prevent the party from introducing new evidence in an affidavit opposing summary judgment."

*Lockard v. GMC*, 52 Fed. Appx. 782, 789 (6th Cir. 2002).  Munoz was one of Smith's co-plaintiffs in

the FLSA lawsuit, and worked in the same Market Claims Office as Smith.  Under these circumstances,

the Court does not excuse Smith's failure to timely identify Munoz as a witness, effectively preventing the

defendants from deposing Munoz.  The Court strikes Munoz's affidavit.

　　　　Even if the Court were to consider Munoz's affidavit, the result would be the same.  Assuming

Mahne discouraged adjusters from participating in the FLSA lawsuit, that does not contribute to a causal

-24-

Case No. 5:04CV2055
Gwin, J.

connection between the lawsuit and Smith's firing. Mahne did not decide which individual employees would be subject to the force reduction. Rather, on October 7, 2003, Allstate Human Resources official Sybil Brenner generated the list of requires-improvement-rated employees to be fired. [Doc. 30, Brenner Aff. ¶3]. Brenner did not know about Smith's involvement in the FLSA lawsuit at that time. *Id.* ¶8.

Other facts negate the causal connection. Although Allstate fired Munoz and Smith during the reduction in force, the parties agree that Allstate did not fire the four other FLSA plaintiffs during the reduction. Of the 32 employees subject to the reduction in force, only two were FLSA plaintiffs.

Smith's poor performance ratings predated her involvement in the FLSA lawsuit. Smith received an annual requires-improvement rating for 2002 on March 13, 2003, *before* Smith joined the FLSA lawsuit. That the requires-improvement ratings continued after Smith joined the lawsuit does not contribute to a causal connection between the FLSA lawsuit and Smith's firing. *See Walcott v. City of Cleveland*, 123 Fed. Appx. 171, 178-79 (6th Cir. 2005) (affirming summary judgment for defendant employer and finding that plaintiff failed to establish causal connection where plaintiff did not demonstrate that employer treated her differently after she engaged in protected activity).

Similarly, Allstate officials included Smith in the force reduction in October 2003, seven months after she joined the lawsuit. The extensive temporal disconnect between Smith's joining the FLSA lawsuit and her firing further undermines the causal connection between the two events. *See Parnell*, 1997 U.S. App. LEXIS 12023, at *8 (affirming summary judgment for defendant employer on retaliation claim and holding that "[a] time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all

-25-

Case No. 5:04CV2055
Gwin, J.

been short periods of time, usually less than six months"); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (reversing finding of retaliatory discharge and holding that "[t]he mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation").

Finally, there is no evidence that Allstate Frontline Performance Leader Karen Denny knew that Smith participated in the FLSA lawsuit until after her termination. Denny was the person directly responsible for evaluating Smith's performance. Nor did Denny know about the reduction in force at the time she placed Smith in "job in jeopardy" status. [Doc. 30, Denny Aff. ¶ 16]. Any inference of retaliatory intent as to Denny is further undermined by the fact that Smith's poor performance ratings might have negatively impacted Denny's own ratings. *Id.* ¶ 17. It strains credulity to say that Denny intended to retaliate against Smith when the retaliatory conduct could have negatively impacted Denny's standing at Allstate.

The plaintiff fails to make a prima facie case of retaliatory discharge.

*3. Prextext*

Assuming Plaintiff Smith had made out a prima facie case of retaliatory discharge, she fails to demonstrate that Allstate's business justifications for the reduction in force were pretext. In arguing pretext on the retaliation claims, Smith incorporates her prextext argument from her discrimination claims. The Court previously explained that Smith fails to demonstrate pretext under Title VII and the ADEA. *See supra* Parts III.B.1.c, III.B.2.b. The Court incorporates those discussions herein, and finds that Smith does not demonstrate pretext on her retaliation claims.

-26-

Case No. 5:04CV2055
Gwin, J.

*D.  Miscellaneous Motions*

Also pending are the defendants' motion to strike [Doc. 39], motion to strike untimely expert

designation and report [Doc. 44], motion to exclude expert report [Doc. 40], and motion to clarify pretrial

dates [Doc. 48].  Again, whether to strike materials is subject to the Court's discretion. *Seay v. TVA*, 339

F.3d 454, 480 (6th Cir. 2003).

*1.  The Defendants' First Motion To Strike*

In their first motion to strike [Doc. 39], the defendants ask the Court to strike the following material:

(1) the affidavit of Dr. John Burke, Jr., (2) unauthenticated C-122B reports, (3) an unauthenticated list of

27 Allstate employees whom the plaintiff asserts had requires-improvement ratings and various personnel

documents for those employees, (4) a human resources policy guide that the plaintiff attributes to Allstate,

(5) the affidavit of David Munoz, (6) conclusory statements in Munoz's and Smith's affidavits, (7)

statements in Smith's affidavit that contradict her deposition testimony, (8) unauthenticated compliment

letters to Smith from customers and co-workers, and (9) various unsupported factual assertions in the

plaintiff's brief opposing summary judgment.

The Court denies the plaintiff's motion to strike as moot as to the following items, because

consideration of the items does not impact the Court's decision to grant summary judgment: (1) Dr. Burke's

affidavit, (2) unauthenticated C-122B reports, (3) an unauthenticated list of 27 Allstate employees whom

the plaintiff asserts had requires-improvement ratings and various personnel documents for those

employees, (4) a human resources policy guide that the plaintiff attributes to Allstate, (5) conclusory

statements in Smith's affidavit, (6) unauthenticated compliment letters to Smith from customers and co-

-27-

Case No. 5:04CV2055
Gwin, J.

workers, and (7) various unsupported factual assertion in the plaintiff's brief opposing summary judgment. *See In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 808 (N.D. Ohio 2004).

For the reasons discussed earlier, the Court strikes the affidavit of David Munoz. *See supra* Part III.C.2. The Court need not consider the statements in Smith's affidavit that contradict her deposition testimony. *See Steier*, 109 Fed. Appx. at 10.

     *2. The Defendants' Motion To Strike Untimely Expert Designation And Report*

The defendants move to strike the expert designation and report of a Dr. Durgin. [Doc. 44]. The plaintiff did not submit Dr. Durgin's materials to the Court. The Court denies the defendants' motion to strike as moot. *See Meridia*, 328 F. Supp. 2d at 808.

     *3. Motion To Exclude Expert Report*

The defendants also move to strike Dr. Burke's expert report under Fed. R. Evid. 702 [Doc. 40]. As previously discussed, the Court denies the defendants' motion as moot. *See Meridia*, 328 F. Supp. 2d at 808.

     *4. Motion To Clarify*

Because the Court grants summary judgment to the defendants, the Court denies as moot the defendants' motion to clarify [Doc. 48].

IV.  Conclusion

For the reasons discussed above, the Court **GRANTS** the defendants' motion for summary judgment [Doc. 30].

-28-

Case No. 5:04CV2055
Gwin, J.

The Court **DENIES** the following as moot: the defendants' motion to strike untimely expert designation and report [Doc. 44]; the defendants' motion to exclude expert report [Doc. 40]; and the defendants' motion to clarify pretrial dates [Doc. 48].

The Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion to strike [Doc. 39].

Accordingly, this action is terminated under Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

Dated: June 30, 2005                                        s/         *James S. Gwin*
                                                                    JAMES S. GWIN
                                                                    UNITED STATES DISTRICT JUDGE